## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| ALVARO VALENCIA-SANCHEZ,      )<br>      ID #49546-177,      )<br>            Movant,      )<br>vs.      )<br>      )<br>      )<br>UNITED STATES OF AMERICA,      )<br>            Respondent.      ) | <br><br><br>No. 3:17-CV-11-B-BH<br>No. 3:15-CR-262-B (2)<br><br><br>Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the *Motion Under 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received January 3, 2017 (doc. 3), should be **DENIED** with prejudice.

### I.  BACKGROUND

Alvaro Valencia-Sanchez (Movant) challenges his federal conviction and sentence in Cause No. 3:15-CR-262-B(2). The respondent is the United States of America (Government).

**A.      Plea**

On June 19, 2015, Movant was charged by indictment with conspiracy to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). (*See* doc. 19.)[1] He was subsequently charged by superseding information with conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and he pleaded guilty to that charge on September 8, 2015. (*See* docs. 25, 71.)

In the supporting factual resume, Movant admitted that from an unknown date in 2015

---

[1]   Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:15-CR-262-B(2).

through May 26, 2015, in the Dallas Division of the Northern District of Texas, he knowingly and intentionally combined, conspired, confederated, and agreed with a co-defendant and others to possess with intent to distribute methamphetamine. On May 26, 2016, the co-defendant was arrested during a sale of methamphetamine, and he told agents that he was a courier for Movant. Agents drove to Movant's home and arrived just as Movant was driving away; they stopped him and saw currency in plain view in the back seat of his vehicle. A search of his home revealed approximately 10 gallons of liquid methamphetamine, 13 kilograms of crystallized methmaphetamine, two firearms, drug ledgers, and lab equipment. Movant agreed that he committed the essential elements of the offense, and he admitted that the facts in the factual resume were true and correct. (*See* doc. 29 at 1, 2-3.)

In a plea agreement, Movant stated that he understood and waived his rights to plead not guilty, to have a trial by jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses, to not be compelled to incriminate himself, and to have the charges presented to the grand jury. (*See* doc. 27 at 1.) He understood the nature and elements of the crime and agreed that the factual resume was true. (*See id*. at 2.) The plea agreement set out the range of punishment and stated that he discussed the federal sentencing guidelines with counsel, and that he understood that the sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding. (*See id*. at 2-3) He had reviewed all legal aspects and facts of the case with counsel and believed that it was in his best interest to plead guilty. (*See id*. at 6-7.) The guilty plea was freely and voluntarily made and was not the result of force or threats, or of promises apart from those included in the plea agreement. (*See id*. at 5.) He waived his right to contest his conviction and sentence in any direct appeal or collateral proceeding,

2

except to bring a direct appeal challenging his sentence as either exceeding the statutory maximum punishment or having been calculated by way of an arithmetic error, or to challenge the voluntariness of his plea or waiver and to bring a claim of ineffective assistance of counsel. (*See id*. at 6.) In exchange, the Government agreed not to bring any additional charges against him based on the conduct underlying and related to his guilty plea, and it agreed to dismiss the remaining charges in the indictment. (*See id*. at 5.)

On September 8, 2015, Movant and counsel appeared for his guilty plea, and he testified under oath. (*See* doc. 71.) He understood his constitutional rights, knew that a guilty plea waived his rights, and understood the consequences of pleading guilty. (*See id*. at 5-6.) He understood the charge against him and admitted that he committed each element of the offense. (*See id*. at 10-11.) He had reviewed the plea agreement with counsel and understood everything in it, including the range of punishment. (*See id*. at 12, 17-18.) He and counsel fully discussed the case, his guilty plea, and application of the sentencing guidelines. (*See id*. at 6-7, 8.) He understood the judge's authority to determine the sentence and the role of the advisory guidelines. (*See id*. at 6-7.) He understood that his plea had to be voluntary and not induced by pressure, coercion, or threats. (*See id*. at 11-12.) No one made him plead guilty. (*See id*. at 12) He had discussed the factual resume with counsel and understood it and admitted that the facts set out in the factual resume were true. (*See id*. at 19.) He pled guilty, and the Court found that his guilty plea was knowing and voluntary. (*See id*. at 18, 20; doc. 45.) His guilty plea was accepted on September 23, 2015. (See doc. 48.)

**B.     <u>Sentencing</u>**

On November 16, 2015, the United States Probation Office (USPO) prepared a Presentence Report (PSR), applying the 2015 United States Sentencing Guidelines Manual (USSG). (*See* doc.

53-1 at 9, ¶ 39.) The PSR stated that Movant was listed as the tenant on the lease agreement for the house, but the co-defendant also lived there and had given agents consent to search the house. (*See id*. at 6, ¶ 22; 7, ¶ 30.) Movant denied living at the house. (*See id*. at 6, ¶ 23.) The agents found over $68,000 in Movant's vehicle. (*See id*. at 6, ¶ 24.) Movant was accountable for 46.5 kilograms of methamphetamine. (*See id*. at 8, ¶ 34.) The base offense level was 38 because the offense involved at least 4.5 kilograms of methamphetamine. (*See id*. at 9, ¶ 40.) Two offense levels were added because a dangerous weapon was possessed. (*See id*., ¶ 41.) Two more levels were added because the methamphetamine was imported. (*See id*. at 9-10, ¶ 42.) Another two levels were added because Movant maintained a premise for the purposes of manufacturing or distributing a controlled substance. (*See id*. at 10, ¶ 43.) Because the PSR found that Movant managed the distribution of methamphetamine and directed the co-defendant to deliver the drugs and receive drug proceeds, two levels were added for being an organizer, leader, manager, or supervisor of the criminal activity. (*See id*. at 6, ¶¶ 22, 44.) Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 43. (*See id*., ¶¶ 49-50.) Movant's criminal history category was one. (*See id*. at 11, ¶ 54). The resulting guideline range was life imprisonment. (*See id*. at 14, ¶ 80.) Because the statutory maximum sentence was 20 years' imprisonment, the guideline term of imprisonment was 240 months. (*See id*.) If not for the plea agreement, Movant faced a potential guideline sentence of life imprisonment because the original indicted offense that involved 500 grams or more of methamphetamine did not have a statutory maximum sentence. (*See id*., ¶ 81.)

At the sentencing hearing on January 14, 2016, the Court adopted the PSR. (*See* doc. 67 at 1.) It sentenced Movant to 240 months' imprisonment, and dismissed the indictment. (*See* doc. 66 at 1, 2.)

C.   **Appeal**

Movant timely filed a *pro se* notice of appeal on January 25, 2016. (*See* doc. 68.) On January 29, 2016, the Fifth Circuit Court of Appeals directed Movant to advise it within 30 days whether he wished to retain appellate counsel, file a motion for appointment of counsel with a financial affidavit, or proceed *pro se*. (*See* 3:17-CV-11-B, doc. 10 at 6-7.) On March 8, 2016, the appeal was dismissed for want of prosecution for failure to timely comply with the January 29, 2016 notice. (*See id*. at 9.) On April 21, 2016, Movant sought to reinstate the appeal because he thought that counsel had been appointed for the appeal. (*See id*. at 10.) By letter of April 26, 2016, the Fifth Circuit took no action on the motion to reinstate because Movant had not remedied his failure to comply with the January 29, 2016 notice. (*See id*. at 14.)

D.   **Substantive Claims**

Movant's § 2255 motion raises the following grounds:

(1) Counsel was ineffective for:

   (a) failing to file a direct appeal as Movant requested;

   (b) failing to consult with Movant about an appeal;

   (c) failing to investigate and present mitigating evidence at sentencing and failing to file a sentencing memorandum or argue for a low end sentence based on his lack of criminal history;

(2) His guilty plea was involuntary because counsel coerced him into pleading guilty and he was not "aware[] of the relevant circumstances and likely consequences."

(3:17-CV-11-B, doc. 1 at 4-8.) The Government filed a response on February 22, 2017. (*Id.*, doc. 9.) Movant filed a reply, received on March 13, 2017, in which he attempts to raise a new claim that counsel should have filed a motion to suppress the search of the house. (*See id*., doc. 11 at 4.)

5

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review.  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error.  *Shaid*, 937 F.2d at 232.  However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).  The Government may also waive the procedural bar defense.  *Willis*, 273 F.3d at 597.

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI.  The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668

6

(1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, the movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot

7

satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

### A.     **Mitigating Evidence**

Movant asserts that counsel failed to present mitigating evidence at sentencing and failed to file a sentencing memorandum or argue for a "low end" sentence based on his lack of a criminal history. His reply claims that the co-defendant was the leader and organizer of the conspiracy and asked Movant to rent a house for the co-defendant's drug operations.

Movant agreed in the factual resume and in his statements in court that the facts in the factual resume were true and correct. According to the factual resume, the co-defendant was Movant's courier. Movant has not shown that the co-defendant was the leader or organizer. Moreover, even if the two-level increase for being a leader had not been assessed against Movant, his offense level would have been 41. The sentencing guideline for an offense level of 41 would have been 324-405 months. The statutory maximum sentence would still have remained 240 months.

Regarding Movant's criminal history, the Court was aware of his criminal history because it was set out in the PSR. The Court could have sentenced him below 240 months' imprisonment if it deemed appropriate but did not do so. Movant has not shown that the sentence would have been

lower if counsel had pointed out his criminal history.²

Movant has not shown that he is entitled to relief on this claim.

**B.** **Motion to Suppress**

Movant contends that counsel should have filed a motion to suppress evidence obtained from a search of the house because the agents did not have a search warrant.

According to the PSR, the co-defendant who lived at the house consented to the search of the house, and Movant denied living at the house. Movant has not shown that the co-defendant's consent to search the house was not valid, and he has not shown that counsel was ineffective for failing to file a motion to suppress. *See Williams v. Davis*, No. H-16-3083, 2017 WL 3620638 at *6 (S.D. Tex. Aug. 23, 2017) (counsel not ineffective for failing to file motion to suppress where resident of premises gave consent to search) (citing *Fernandez v. California*, 134 S.Ct. 1126, 1132-36 (2014); *Heien v. North Carolina*, 135 S.Ct. 530, 536 (2014)). Counsel was not required to file a futile motion. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections"). He has not shown that he is entitled to relief on this claim

### IV. INVOLUNTARY PLEA

Petitioner contends that his plea was involuntary because it was coerced by counsel, and he was not aware of the relevant circumstances and consequences of his plea.

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the

---

² The Government asserts that counsel asked for a lower sentence based on Movant's criminal history at the sentencing hearing. The hearing was not transcribed, however.

defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting *Brady*, 397 U.S. at 748). A plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences

10

of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

Movant admitted both in the plea agreement and in his sworn testimony that he understood the charge against him. He had reviewed the plea agreement with counsel, and he understood everything in it, including the range of punishment. He and counsel fully discussed the case, his guilty plea, and application of the sentencing guidelines. He understood and waived his rights and

11

also understood the consequences of pleading guilty. He knew that his plea had to be voluntary and not induced by pressure, coercion, or threats, and stated no one made him plead guilty. He had reviewed all legal aspects and facts of the case with counsel and believed that it was in his best interest to plead guilty, and he admitted that he committed the offense.

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

Movant has failed to overcome the presumption of veracity given to his sworn statements in open court, and the presumption of affording great evidentiary weight to court records. *See Blackledge*, 431 U.S. at 73-74. His sworn statements in open court and the plea documents contradict his claim that he was coerced, and that he was not aware of the circumstances and consequences of his plea. *See id*. His vague and conclusory assertions are not evidence of coercion or lack of awareness of the guilty plea and its consequences. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding."). Movant has not shown that his guilty plea was involuntary. He has not shown that he is entitled to relief on this ground.

## V. DENIAL OF APPEAL

Movant contends that he was denied the right to appeal. He asserts that counsel did not consult with him about an appeal and did not file an appeal as requested.

"There is no constitutional right to appeal a criminal sentence." *United States v. Burns*, 433 F.3d 442, 445 (5th Cir. 2005) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Counsel "is not burdened by any general duty to perfect an appeal of every criminal conviction." *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999). Counsel's failure to pursue an appeal can amount to ineffective assistance under *Strickland*, however. *See United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 479-80 (2000)).

The assessment of deficient performance "begins with the question whether counsel 'consulted' with the defendant regarding an appeal." *Pham*, 722 F.3d at 323 (citation omitted). "'Consulting' is a term of art that means advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. (citation omitted). There is no constitutional requirement that counsel consult with the defendant about an appeal in every case. *Flores-Ortega*, 528 U.S. at 479-80. A constitutionally-imposed duty arises when there is reason to think that a rational defendant would want to appeal, such as when there are nonfrivolous grounds for appeal, or when the defendant has reasonably demonstrated to counsel that he is interested in appealing. *Id*. at 480.

A defendant can satisfy the prejudice prong by demonstrating that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, [defendant] would have timely appealed." *Id*. at 484. "[C]ourts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."

*Id.* at 477. "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Pham*, 722 F.3d at 323-24. If a defendant proves, by a preponderance of the evidence, that he directed his attorney to file an appeal and it was not filed, prejudice is presumed regardless of the merits and regardless of any appellate waiver. *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). When a defendant is denied the opportunity to appeal due to ineffective assistance of counsel, the defendant is entitled to an out-of-time appeal. *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001).

Even assuming that counsel's failure to consult with Movant or to file a notice of appeal was deficient performance, Movant has not shown that he was prejudiced. He filed a timely *pro se* notice of appeal, so any deficient performance did not deprive him of the opportunity to appeal.[3] *See Garcia-Bertadillo v. United States*, No. 16-CV-234-B, 2018 WL 1833130 at *5 (N.D. Tex. Feb. 26, 2018), *rec. adopted*, 2018 WL 1806644 (N.D. Tex. Apr. 17, 2018) (no prejudice for counsel's failure to file notice of appeal where defendant timely filed a *pro se* notice of appeal); *United States v. Ramos*, No. 2:14-CV-451, 2015 WL 1310573 at *3 (S.D. Tex. Mar. 24, 2015) (same). Movant's appeal was dismissed because he did not comply with the Fifth Circuit's requirements, not because of any failure of counsel to file a notice of appeal or consult with him about an appeal. Movant has not shown that he is entitled to relief on this claim.

## VI. EVIDENTIARY HEARING

No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Here, the record

---

[3] Counsel's affidavit states that he consulted with Movant about his appellate rights. (*See* doc. 10 at 15.)

conclusively shows that Movant is entitled to no relief, so no hearing is required.

## VII. RECOMMENDATION

The motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 should be **DENIED** with prejudice.

**SIGNED on this 4th day of September, 2018.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE